You may proceed. Thank you, Your Honor. Good morning. May it please the Court, my name is Katherine Morris Crowe. I represent the appellant, Calvin Fuse, in this case. And if possible, I would like to reserve three minutes for rebuttal. I'd like to begin by addressing the two cases that were cited in our briefs and discussing them in a little more detail. The first is Wood v. Houseright. And this issue relates to why this case is particularly troubling, because it involves a non-medical officer interfering with a prescribed course of care, in this case a scheduled surgery. And the second case is Canal v. Bradshaw. I'd like to clarify the procedural history and factual history in that case. And in that regard, we have provided courtesy copies to counsel and the court of the Ninth Circuit briefing in that case, which explains the procedural and factual history and why. And we believe it's appropriate to continue the line. Normally, we wouldn't be looking at – we wouldn't look at briefs from other cases. We would look at reported cases. I understand. Because, obviously, a brief is argument, and there's only one side presented in that brief. I understand, Your Honor. And I present this only because we made an error, which we – procedural aspects of the earlier case. So thank you. Thank you. Turning to the first issue, Wood v. Houseright, as Judge Reinhart pointed out in that case, when a non-medical official interferes with a prescribed course of care, that is actually worse. Well, when you say interfere, though, I mean he claims he was just following the required procedure, right? He means the defendant. Right. And he was following a policy that, as the district court correctly found, was flagrantly unconstitutional. He was – he, without just legitimate justification, prevented a scheduled surgery for going forward based on a policy that he had every reason in the world to know violated the Constitution. In fact, it's – I'm just trying to parse out what the claim of deliberate indifference is. He gets out of the picture once he permits the transfer to go forward. Is that correct? Yes. So is – if we're looking at deliberate indifference, do we look solely at his failure to either follow up or at least make further inquiries to prevent the transfer, or do we look at the consequence of the transfer, which was, of course, that he didn't even get his emergency surgery for a couple of weeks? I think when you – when you're looking at his state of mind, you deal with what the facts he was facing there. And when – what he was facing at the time when he was deliberately indifference was knowledge that there was a scheduled surgery, a scheduled emergency surgery, and that by ordering Mr. Hughes onto the bus, he derailed that surgery. And so instead of – and this really goes to the causation point. You can't say now that he didn't cause the harm because Mr. Hughes would have been – his pain would have been relieved that morning had he not been ordered onto that bus. On February 19th, the transportation order must have been cut prior to the actual transportation taking place on February 19th, agreed? Yes. Then this is a toothache that comes up without any prior notification to transportation and it appears that he received the 600 milligrams of ibuprofen. He was treated, you know, as best he could be treated. So that means, if I follow your logic, that any transportation order could be held up, even in – however we view this, an emergency or non-emergency situation. This certainly isn't the kind of case I've had before where a drill bit was literally left in the person's jaw. He's treated within 13 days. So I'm just curious how you rationalize transportation orders because prisoners could really prey upon those. They could come up with all sorts of reasons for transportation not taking place in a timely fashion. Here it doesn't appear that the prison authorities were acting with any subterfuge or animosity. And if I may, the difference here is that he had obtained – there was medical verification that this was a real issue and he was scheduled for an emergency surgery. And that really differentiates it from a case in which a prisoner is just manufacturing or trying to avoid an order. And this is – this really goes back to the point that Judge Reinhart was making in would-be house right, because you have a non-medical official essentially substituting his view. And the reality of prison life, as Judge Reinhart noted, and in these points he was speaking for the majority, the reality of prison life is that the standard of care is somewhat lower than it is in prisons. Does it make a difference whether the claimed medical emergency is life-threatening or non-life-threatening? Under Estelle and its progeny, it doesn't. What matters is whether this was a serious medical issue. And that goes back to having verification by the medical authorities that he needed treatment, he needed surgery. But where's the deliberate indifference? There's the key as far as I'm concerned, as Judge McKeown raised, and that is he's being treated. It may not be, you know, the care you and I would hope to have on the outside, but this certainly isn't neglect. Okay. On the deliberate indifference point, there is a statement by Lieutenant Perez that he didn't care. He didn't care about the surgery Mr. Fuse was getting on the bus. And that is demonstrative of a state of mind of deliberate indifference. So that's a factual dispute that we obviously have to take in favor of Mr. Fuse. Yes, Your Honor. Yes, Your Honor. And that demonstrates the deliberate indifference. In addition, on the pain medication, Canal is again instructive here because this was not discussed, highlighted in the briefs, but actually in that case, Motrin was offered to the plaintiff. And here we have Motrin as well, another over-the-counter pain reliever. And again, there are cases that really are instructive, and there's a policy that is instructive. Because if we let prison officials substitute their judgment based on over the judgment of medical personnel, based on over-the-counter medications, this could happen. This could run rampant. And, you know, the case law in Westby, Kiev and in Mandel, where they were offered over-the-counter treatments, but, you know, that's no treatment at all when you're dealing with a serious medical condition. And that was verified by the medical authorities. And unless the Court has additional questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. May it please the Court. I'm Jennifer Nygaard, Deputy Attorney General, representing Mr. Perez. The district court correctly granted summary judgment in Mr. Perez's favor, finding that he was entitled to qualified immunity. A reasonable official could have believed that Mr. Perez's conduct was lawful. Mr. Perez knew that he had been given pain medication before he was sent on the bus. He also believed that Fuse would receive medical treatment immediately upon his arrival at the new institution. What was that? What does the record show that belief was based on? Had he ever been to Corcoran? Is there any evidence that he'd ever been to Corcoran and observed what goes on there? No, but the evidence was that, in his declaration, Mr. Perez stated that based upon his experience as a correctional officer, he knew that when prisoners are transferred to new institutions, they receive medical. What that means is he knew they're supposed to, but we all know the medical system in the state prison is broken down. I'm sure he knew that, too, right? I mean, there's a receiver point over the medical system in the state prison now, which shows it's not working at all. Maybe he thought that it should have worked that way, but how do you know it was working that way? Is there any evidence in the record that he knew? No, it's just that his belief, his understanding that when prisoners are transferred. I know that. What was his understanding based on? Is there any objective evidence on which that was based? Just his years of experience as a correctional officer. It seems to me that this case is a little different, because even if he had a good faith belief that you would get care, it seems to me that there's quite a gap between getting care and having emergency surgery. I mean, emergency surgery is scheduled for tomorrow morning, and he doesn't say anything about, well, I know he would be able to just get on the bus and drive over there and get emergency surgery at the next place. I mean, it's one thing to say, well, when you get there, you'll get some medical care, but doesn't the emergency nature of this, the fact that you had a medical doctor that gives him emergency surgery, which in this system, you know, is not all that easy to get, doesn't that kind of pump up the stakes a little bit in terms of the officer's awareness and knowledge? No, Your Honor, because all we have in this case is the plain of Mr. Fuse's assertion that he had emergency surgery scheduled. We don't know that there was actually an emergency surgery scheduled. There may have been an emergency appointment for him. So based upon Mr. Fuse's assertion... But don't we have to take the facts in his, in light most favorable to him at this stage? Yes. So assuming that he was correct that he did have emergency surgery scheduled, Mr. Perez still believed that the care that this plaintiff would receive at the other facility could possibly be better than the facilities at San Quentin. So he didn't have that view of mind. I mean, that to me is an amazing thing. So he has emergency surgery scheduled, and then the officer makes some nonmedical subjective judgment, maybe he'll be better off to get on the bus. That's what you're basically telling us? Yes, because he knew that he had pain medication when he got on the bus. He also knew that he would receive treatment immediately upon his arrival. And Mr. Perez actually thought whether or not he was correct... But going back to Judge Toshima's question, how did he know that? Years of experience. Any correctional officer, based upon my experience representing the Department of Corrections and their employees for the last year, that's just common knowledge that when inmates get transferred to new prisons, part of the receiving and release process is a medical examination. Is an examination, not necessarily immediate treatment, right? An examination is not the same as an emergency treatment. Right. But at that time, he would be able to tell the medical people at Corcoran, I have this toothache. And then presumably upon Mr. Perez's state of mind, he thought that once he got there, told the people that he had the toothache, then he would get treated. In this record, I don't see any indication, and please refresh my recollection about why he was being transferred. If he was a disciplinary transfer or the reason for his transfer. Can you or your opposition help us with that? I think the reason that is stated in the record, there is no reason specifically why this inmate was being transferred. And how long had that transportation order been cut prior to his transportation on February 19th? I'm sorry, I don't know, Your Honor. Okay. There's something in, I'm not going to argue a case for you, but there's something in, I think, Lieutenant Perez's declaration to the effect that, well, we're supposed to accelerate all transfers as quickly as we can because San Quentin is real overcrowded. That seems to be at least one of the reasons for the transfer, right? Because of the overcrowding? Yes, that is the general reason. He said something like his belief was that the medical facilities at Corcoran were better than those at San Quentin. Yes, he did say that. I don't know, but that seems to be his opinion. That was his thought at that time, yes. Should we be concerned over the subjective belief of the lieutenant involved? Because I think what you're hearing, at least from my perspective, is we may recognize that on intake into Corcoran that there is a level process where you're going to be once again reevaluated in terms of level 1, 2, 3, or 4, and you're going to be asked do you have any medical problems. I think the concern you may be hearing from us is the reality of the follow-up in light of what's perceived to be the very poor treatment. It's one thing to say I have a toothache. It's another thing to be treated when you get into Corcoran, when you have that scheduled treatment already arranged at San Quentin, and that's what's disturbing me. Right, and rightly so. That is somewhat disturbing, but it doesn't rise to the level of deliberate indifference because in order for Officer Perez to have been deliberately indifferent, he needed to have the sufficiently culpable state of mind, and here he thought that sending the... You know, Judge Hamilton's characterization of his action as being flagrantly unconstitutional when he told the inmate, well, you know, I don't care about your problems. If it's not life-threatening, the warden says you're going to go and you're going to get on the bus. Right? Isn't that deliberate indifference? No, because he still, even putting aside, even if he was following a flagrantly unconstitutional policy, he still didn't have the state of mind because he thought that Fuse would actually get quicker treatment, better facilities, possibly better care, and he knew that he had pain medication to take care of him until he got that treatment. So he didn't have the state of mind. Did he? In other words, we know from the record that ibuprofen was given to hold him over from February 18th until the 19th. I don't see any place in the record, and correct me if I'm wrong, that he had medication that he was able to carry with him that would last him some period of time. And that's his complaint, the 13-day period of time without treatment. Right. I don't think there's anything saying that he, you know, had a supply, but there is in the record information that he had Motrin until he received the surgery on March 3rd. Okay. You've put, I think, a slightly more elegant approach to it than perhaps the officer did, and I appreciate that. But it did seem from the record that what he was saying was, you know, I've got this order, you're on board, and I'm executing the order, and you don't have a little piece of paper, and you're out of here. I mean, the question is whether, you know, maybe not whether he in his head thought Corcoran was going to be a better option, but isn't the question whether a reasonable officer, given knowledge of emergency surgery, would basically say, you're on the bus, no ifs, ands, or buts about it, you're on the bus. Doesn't that really fly in the face of our case law that says that if you need medical attention and you're not given it, that that is deliberate indifference? No, because I think that for qualified immunity, we need to take into consideration clearly established case law and the information that the officer had in their possession at that time. So assuming that what Hugh said was correct, that he had emergency surgery scheduled, so taking that information that Prez knew he had that emergency surgery scheduled, there still was no clearly established case law to show that by sending him off with medication, knowing that he would get treated upon his arrival, or at least medically seen, and referred to the right person for treatment, and that the facilities were better, there's no case law to show that, you know, somebody with that kind of state of mind was being deliberately indifferent. So if Your Honors have no further questions, I will. Thank you. Thank you. Very, very briefly, to address this no clearly established case law point that counsel made. First, under the Kennedy case, what was stated in Kennedy is that the inquiry did not need a case that is identical or even materially similar on the facts to find that there's no qualified immunity. Because what the real inquiry was is, is there enough law out there to provide the defendant with notice that his actions were illegal. And first, the Canal case is, in fact, substantially similar, if not identical, to the case at hand. And even without it, we have, for example, the Wood case, Hunt, Estelle, Mandel, West v. Kiev, and the series of cases that were cited in our brief and were not before the district court. And those cases really do establish that Lieutenant Perez had fair warning, that he should have taken a moment and said, you know, why don't we wait for the next bus and let the surgery go forward. If there are no additional questions. Thank you. Let me thank both counsel for your arguments this morning. The case of Fuse v. Perez is submitted.
judges: Tashima, McKeown, Carter